Thomas **NEVIUS,** Petitioner–Appellant,

v.

George **SUMNER,** Director of Department of Prisons, and Brian McKay, Attorney General of the State of Nevada, Respondents–Appellees.

No. 86–2878.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 17, 1987.

Decided July 22, 1988.

John J. Graves, Jr., Graves, Leavitt & Koch, Cal J. Potter, III, Lovell, Bilbray & Potter, Las Vegas, Nev., for petitioner-appellant.

Brian Randall Hutchins, Atty. General's Office, Nevada, Carson City, Nev., for respondents-appellees.

Before CANBY, and BOOCHEVER, Circuit Judges, and TAKASUGI,[*] District Judge.

CANBY, Circuit Judge:

Thomas Nevius appeals the district court's denial of his petition for a writ of habeas corpus. Nevius contends that (1) the prosecutor's improper exercise of his peremptory challenges against minority veniremen deprived Nevius of a representative petit jury in violation of the sixth and fourteenth amendments; (2) the district court improperly denied Nevius' request for an evidentiary hearing; (3) prosecutorial misconduct during closing arguments to the jury constituted reversible error; and (4) the indictment was defective in alleging first degree murder.

## BACKGROUND

The evidence accepted by the jury established that, on July 12, 1980, Nevius and three other men entered the Las Vegas apartment of David and Rochelle Kinnamon with the intent to steal money and jewelry. While two men ransacked the kitchen and living room, Nevius and another man dragged Rochelle Kinnamon into the bedroom where they attempted to assault her sexually while holding her at gunpoint. When David Kinnamon returned home unexpectedly, the four men fled

[*] The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

through the bedroom window. As Mr. Kinnamon entered the bedroom, Nevius turned and fired four shots. Mr. Kinnamon was killed almost instantly by gunshot wounds to the head.

Nevius, who is black, was charged with first degree murder. During jury selection, the prosecution exercised seven peremptory challenges, excluding from the jury panel all four blacks (including one alternate juror) and both Hispanics. At trial Nevius admitted involvement in the crime, but claimed that he was not the one who fired the revolver. The jury found Nevius guilty of murder, burglary and sexual assault with the use of a deadly weapon. The same jury sentenced Nevius to death. The Nevada Supreme Court affirmed the conviction and sentence. Nevius' petition for post-conviction relief was denied by the state trial court. The Nevada Supreme Court affirmed. Nevius subsequently sought federal habeas corpus relief in district court. The district court denied his petition. This appeal followed.

## STANDARD OF REVIEW

We review *de novo* the district court's denial of a habeas corpus petition. *Weygandt v. Ducharme,* 774 F.2d 1491, 1492 (9th Cir.1985). Because the petition was rejected without an evidentiary hearing, we must make a two part inquiry. First, we must determine whether Nevius has alleged facts which, if proven, would entitle him to relief. If Nevius did allege such facts, then we must determine whether an evidentiary hearing is necessary to establish the truth of his allegations. *Lincoln v. Sunn,* 807 F.2d 805, 808 (9th Cir. 1987).

## DISCUSSION

1. *The Prosecutor's Peremptory Challenges*

Nevius alleges that the prosecutor improperly exercised his peremptory challenges to exclude black and Hispanic veniremen from the petit jury. Nevius contends that prosecutorial statements made at trial and during oral argument before the Nevada Supreme Court show that the peremptory challenges were improperly exercised. In addition, Nevius renews an argument, first raised in the district court, that certain post-trial statements made by the prosecutor to defense counsel prove that the state exercised its peremptory challenges for improper, prejudicial reasons.[1] Nevius argues that the prosecutor's improper exercise of peremptory challenges violated his sixth amendment right to a fair and impartial jury and his fourteenth amendment right to equal protection.

### A. Sixth Amendment Claims

The sixth amendment requires that jury panels be drawn from a source fairly representative of the community. *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975). However, the fair cross section requirement applies only to the larger venire pool and not to the petit jury: "Defendants are not entitled to a jury of any particular composition." *Id.* at 538, 95 S.Ct. at 702. Indeed, the Supreme Court has expressly rejected a claim similar to Nevius': "We remain convinced that an extension of the fair cross section requirement to petit juries would be unworkable and unsound, and we decline ... to adopt such an extension." *Lockhart v. McCree,* 476 U.S. 162, 174, 106 S.Ct. 1758, 1765, 90 L.Ed.2d 137 (1986). Nevius' sixth amendment claim therefore must fail because he does not allege discrimination in the selection of the venire.

### B. Fourteenth Amendment Claims

"[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defend-

---

1. Defense counsel asserts that the prosecutor made the following post-trial statement to him: "You don't think I wanted all those niggers on my jury, did you?" When later told that the main issue of the federal habeas corpus petition was the striking of minority jurors, the prosecutor allegedly answered, "I did a good job of that, didn't I?"

ant." *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). In *Batson,* the Supreme Court held that a defendant could establish a prima facie case of racial discrimination by showing that the prosecutor used peremptory challenges to strike members of the defendant's race from his petit jury, under circumstances sufficient to raise an inference that the jurors were rejected on account of their race. *Id.* at 96–97, 106 S.Ct. at 1722–23. The Supreme Court subsequently held, however, that the *Batson* rule, permitting a defendant to prove discrimination from evidence derived from his trial alone, is not retroactive. It is therefore unavailable to petitioners such as Nevius, whose conviction had become final and no longer subject to direct appellate review by the time *Batson* was decided. *See Allen v. Hardy,* 478 U.S. 255, 260–61, 106 S.Ct. 2878, 2881, 92 L.Ed.2d 199 (1986).

Nevius' fourteenth amendment claim must therefore be decided under the pre-*Batson* rule set forth in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Swain,* the Supreme Court rejected an equal protection claim based on a prosecutor's having peremptorily stricken all six blacks from a petit jury panel. While recognizing that systematic exclusion of blacks from petit juries would violate the fourteenth amendment, the Court held that the nature of the peremptory challenge militated against a constitutional right to examine the prosecutor's motives for exercising his peremptory challenges in any given case.

> The presumption in any particular case must be that the prosecution is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it.

380 U.S. at 222, 85 S.Ct. at 837. *Swain* suggested, therefore, that to succeed on

equal protection grounds a defendant would have to show that the purposes of the peremptory challenge were being perverted by a systematic striking of blacks from petit juries in case after case, "for reasons wholly unrelated to the outcome of the particular case on trial." *Id.* at 223, 85 S.Ct. at 837; *see Batson,* 476 U.S. at 91–92, 106 S.Ct. at 1719–20. It is undisputed that Nevius made no such showing in this case.

This court placed a gloss on the *Swain* rule, however, in *Weathersby v. Morris,* 708 F.2d 1493 (9th Cir.1983), *cert. denied,* 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984). There, as here, we were presented with a case in which the prosecutor had voluntarily placed on the record his reasons for exercising his peremptory challenges against members of the defendant's race. We held that *Swain* did not preclude us from examining the prosecutor's reasons.

> The prosecutor's motives have been voluntarily put on the record and the prosecutor can no longer be cloaked by the presumption of correctness. Our reading of *Swain,* convinces us that in such circumstances a court need not blind itself to the obvious and the court may review the prosecutor's motives to determine whether "the purposes of the peremptory challenge are being perverted," by excluding an identifiable group "from juries for reasons wholly unrelated to the outcome of the particular case on trial."

708 F.2d at 1496 (citations omitted) (quoting *Swain,* 380 U.S. at 229, 85 S.Ct. at 840). Nevius contends that the application of *Weathersby* to the facts of his case requires that we reverse. We disagree.

At Nevius' trial, the prosecutor stated for the record his reasons for rejecting each of the four black jurors. They were: (1) One juror was an unemployed maid with a tenth grade education; she did not remember any of the names read to her from the indictment. She was afraid to sit on the jury. The key problem, according to the prosecutor, was that in response to questions of counsel she said at one point that she could not be impartial, but could not say why. (2) A second juror was a college student in Criminal Justice. He

was very hesitant on the death penalty, which caused the prosecutor to strike him. (3) A third juror was a probation officer, which the prosecutor regarded as favorable, but the juror knew and worked with Nevius' father in Golden Gloves. (4) The fourth juror (an alternate) was stricken, according to the prosecutor, because the defense seemed to want him so much; the juror stated that his family had all been in and out of jail.

■ Nevius contends that these reasons are insufficient, either on their face or in light of the record, to show that the challenges were exercised for proper trial-related purposes. *Weathersby* itself refutes that claim. In *Weathersby*, the prosecution had challenged all sixteen remaining black jurors from the black defendant's petit jury. The prosecutor's stated reasons included the facts that three jurors had some connection with the defendants, that others "gave evasive answers," that it "takes a gut reaction as to somebody you feel is giving evasive or untruthful answers to the questions posed," and that black jurors would be subject to intimidation by the Black Guerrilla Family, a group connected with the prison slaying at issue. We held that all of these reasons were sufficiently trial-related and did not violate the equal protection clause. *Weathersby*, 708 F.2d at 1497. The challenges of black jurors in Nevius' case were far fewer, and better supported, than those in *Weathersby*, 708 F.2d at 1497. The only possible exception was the fourth juror, the alternate, for whom reasons as vague as some of those in *Weathersby* were given. No alternate jurors were called upon to serve in Nevius' case, however; the challenge was harmless.

Nevius next contends that, on appeal of his case to the Nevada Supreme Court, the same prosecutor, who argued for the State, indicated that he had challenged the black jurors because of their race. We do not so read the transcript of argument, although there are some passages that lend support to Nevius' argument.

In the Nevada Supreme Court, the prosecutor suggested that *Swain* permitted prosecutors to take into account in any given case that a black juror may be particularly sympathetic to a black defendant. The prosecutor argued that under *Swain*, a prosecutor violated equal protection only when, in repeated cases, he challenged black jurors just because they were black, regardless of the nature of the cases or the race of the defendants.[2] This line of argument, however, stimulated intense questioning by the Justices of the Nevada Supreme Court to determine whether the prosecutor was stating that he had challenged Nevius' jurors because they were black, or because the prosecutor indulged in a presumption that they would be partial to a black defendant. In each instance when the prosecutor was thus questioned, he denied that he had so acted. The following exchange is typical:

Prosecutor: Your Honor, if the defense could point out cases where I've kicked blacks off all juries whether the defendant is black or white or whatever, he'd have a darn good case against me. I've never done that. The only time—I think this has happened to me where I've ended up excluding all the blacks from the jury panel and its [sic] or the sole reason that I look at them first of all and wonder gee is there going to be some problem here and I look at all their other qualifications. Its [sic] just, the Supreme Court is not oblivious to this problem.

Justice: You excluded these jurors because there [sic] black or you will concede that won't you.

Prosecutor: Because their [sic] black.

Justice: Yes.

Prosecutor: No, I wouldn't concede that. Not at all. I excused them....

2. There is certainly language in *Swain* to support the prosecutor's view, *e.g.*, 380 U.S. at 221–24, 85 S.Ct. at 836–37. Interpreted in light of later developments, however, the *Swain* rule does not justify challenging jurors in a particular case solely because their race is the same as defendants. *Batson*, 476 U.S. at 89–96, 106 S.Ct. at 1722; *id.* at 101 n. *, 106 S.Ct. at 1725 n. * (White, J., concurring).

Justice: Because they were black and they didn't satisfy you that uh they didn't carry their burden of proof.

Prosecutor: No I actually thought that these jurors were not going to be good jurors. I, I took notes at the time I was discussing their voir dire with them as to the problems I had with them and those are all on the record. I think the court can look at those and see that those are valid reasons. I'm just saying that in addition to that I just want to point this problem out to the court.

In other exchanges, the prosecutor seemed to say that he would give special attention to black jurors, to see whether they showed any particular interaction with the black defendant. Yet he denied that he would challenge them because they were black, he would challenge them because they had indicated to him in some way that they might be partial to the defendant. Finally, he asserted that he had had many juries with blacks on them and, in response to a question from the bench, that he had also had juries with blacks on them in cases where the defendant was black.

■ We cannot read these statements of the prosecutor during argument to the Nevada Supreme Court as compelling the conclusion that the prosecutor's challenges violated the Equal Protection Clause under the standards of *Swain* and *Weathersby*. It is true that the argument over the manner of exercising peremptory challenges is a disturbing one, particularly in a capital case, but the disturbing elements are inherent in peremptory challenges under the regime of *Swain*. Moreover, much of the argument in Nevius' appeal was understandably hypothetical, in contrast with the specific statements of reasons for his challenges that the prosecutor read into the record at trial. None of the argument amounted to a concession or even a statement that jurors had been challenged simply because they were black. The issue of a prosecutor's motivation is one of fact. *Batson*, 47 U.S. at 97–98 & n. 21, 106 S.Ct. at 1723 & n. 21. We are bound to accept findings of fact by the state courts if they are fairly supported by the record. *See* 28 U.S.C. § 2254(d). The presumption of correctness attaches whether the findings of fact are made by a state trial court or state appellate court. *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). The Nevada Supreme Court, while disagreeing with our holding in *Weathersby* that permitted inquiry into the reasons for the prosecution's challenges, squarely held that Nevius had not made out a case even under the *Weathersby* standard. *Nevius v. State*, 101 Nev. 238, 699 P.2d 1053, 1059 n. 3 (1985). It reiterated that view in an order denying rehearing. On the record before us, we cannot say that the state court's findings are not fairly supported.

### 2. *Denial of a Post–Trial Evidentiary Hearing*

■ Nevius argues that he was improperly denied an evidentiary hearing in state court post-conviction proceedings. He contends that the district court should have remanded to the state court for an evidentiary hearing or should have held one itself, to permit further inquiry into the prosecutor's motives for exercising his peremptory challenges.

In his post-conviction petition in state court, however, Nevius did not offer any new facts to precipitate an evidentiary hearing. He presented the record of his trial and appeal, and asked for relief. His claims regarding the prosecution's peremptory challenges had been raised and ruled upon at the trial and on direct appeal. Nevius offered no new or extra-record evidence to require an evidentiary hearing.

In federal district court, Nevius similarly failed to present facts necessitating an evidentiary hearing, or to show that he had been unable to raise factual issues regarding the peremptory challenges in state court. *See Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). We cannot say that the district court, on the record before it, erred in denying an evidentiary hearing.

■ In oral argument to the district court, and in his brief and oral argument in this court, Nevius' counsel makes serious

allegations concerning comments by the prosecutor alleged to have been made to defense counsel sometime during 1986. *See* note 1, *supra.* Those representations, if proven, might have presented in a different light the factual issues concerning the motivation of the prosecutor in exercising his peremptory challenges. The alleged remarks, however, are not part of any record in this case. They have not been presented to the state courts, either on appeal or during post-conviction proceedings. In habeas proceedings, the federal courts are not free to entertain new evidence that places the claim in a significantly different posture, when that evidence was never presented to the state courts. *Aiken v. Spalding,* 841 F.2d 881, 883 (9th Cir.1988). An even more fundamental problem is that the reputed statements of the prosecutor were not part of the record before the district court and are not part of the record before us. We are told in briefs and argument that certain evidence exists, but we can hardly take cognizance of it, nor could the district court, when there is no reflection of that evidence in the record. Nor can the State properly respond.

If there is evidence that should be presented to the state courts,[3] then the attempt must first be made to present it there and to make a record. Only thereafter, under the appropriate procedural strictures, may the matter be addressed in federal court.

3. *Prosecutorial Misconduct in Closing Argument*

Nevius also contends that improper prosecutorial behavior at trial deprived him of a fair trial. Nevius alleges that the prosecutor's voice became choked with emotion, his eyes welled up with tears, and he made improper statements expressing personal opinions during closing arguments to the jury.

■ Errors at trial that are not preserved by contemporaneous objection and subsequent appeal to the state supreme court are barred in a collateral habeas corpus review, unless the petitioner can show cause and prejudice. *See Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977); *Huson v. Rhay,* 446 F.2d 861, 862 (9th Cir.1971); *Ybarra v. Wolff,* 616 F.Supp. 347, 250 (D.Nev.1985). In the two instances that defense counsel objected to the prosecutor's conduct, the district court rejected the requested admonishment and resolved the matter; no request for an admonition to the jury or motion for mistrial was made. The record also indicates that defense counsel did not request a mistrial or an admonition to the jury after closing arguments. The Nevada Supreme Court found that the prosecutorial behavior in question did not constitute reversible error. *Nevius v. State,* 101 Nev. 238, 247–48, 699 P.2d 1053, 1059 (1985). The district court also reviewed the alleged misconduct and concluded that "any prosecutorial misconduct was not so flagrant as to constitute a denial of the defendant's fundamental right to due process." *Nevius v. Sumner,* No. CV–S–86–122–HDM at 9 (D.Nev.1986). Although the prosecutor's behavior at trial might have approached misconduct, any error could have been cured by contemporaneous objections. We do not find that the prosecutorial conduct at trial deprived Nevius of any constitutional right.

**3.** *Weathersby* held that "where the prosecutor at trial volunteers his or her reasons for using peremptory challenges," the court may review the prosecutor's motives. *Weathersby,* 708 F.2d at 1496. In *Weathersby* that review involved scrutiny only of the prosecutor's remarks in the trial record. In our view, however, the principle of *Weathersby* also permits scrutiny of other remarks volunteered by the prosecutor that may further illuminate the reasons for his peremptory challenges, which he has already voluntarily made a subject of record. To repeat what we said in *Weathersby:*

The prosecutor's motives have been voluntarily put on the record and the prosecutor can no longer be cloaked by the presumption of correctness. Our reading of *Swain,* convinces us that in such circumstances a court need not blind itself to the obvious and the court may review the prosecutor's motives to determine whether "the purposes of the peremptory challenge are being perverted," *Swain,* 380 U.S. at 224 [85 S.Ct. at 838], ... by excluding an identifiable group "from juries for reasons wholly unrelated to the outcome of the particular case on trial." *Id.* 708 F.2d at 1496.

### 4. The Indictment

Nevius finally claims that the indictment brought against him was improper because it did not allege premeditation as an essential element of the murder charge. Nevius argues that absent the premeditation element, the indictment charged only second degree murder, while he was forced to defend against, and was ultimately convicted of, first degree murder.

 The sixth amendment guarantees a criminal defendant a fundamental right to be clearly informed of the nature and the cause of the accusation against him. *Givens v. Housewright*, 786 F.2d 1378, 1380 (9th Cir.1986). To determine whether a defendant has received fair notice of the charges against him, we look first to the indictment. *Lincoln v. Sunn*, 807 F.2d 805, 812 (9th Cir.1987). The principal purpose of an indictment is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense and plead double jeopardy in a later prosecution. *United States v. Lane*, 765 F.2d 1376, 1380 (9th Cir.1985). However, an indictment is not constitutionally defective if it states "the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against." *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir.1985), *quoting Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962), *cert. denied*, 475 U.S. 1049, 106 S.Ct. 1271, 89 L.Ed.2d 579 (1986).

 The indictment charged Nevius and his co-defendants with felony murder,[4] burglary, robbery and sexual assault, all with a deadly weapon. The indictment also included the applicable sections of Nevada law.[5] It is well-established law in Nevada that "the words 'wilful' and 'premeditated' are not so remote in essential meaning that the use of one without the other would leave a defendant unapprised of the charge against him, or render him unable to prepare a defense thereto." *Langley v. State*, 84 Nev. 295, 439 P.2d 986, 988 (1968). In the context of Nevius' entire indictment, we agree. We conclude that the indictment fairly notified Nevius of the offenses charged against him.

AFFIRMED.

---

**4.** Count I of the indictment filed against Nevius reads in pertinent part:

"The defendants, above named ... are accused by the Clark County Grand Jury of the crimes of MURDER (Felony—NRS 200.010, 200.030) ... committed at and within the County of Clark, State of Nevada, on or about the 12th day of July, 1980, as follows:

Count I—Murder [the Defendants above named] did then and there, without authority of law and with malice aforethought, wilfully and feloniously kill DAVID LEE KINNAMON, a human being, by shooting at and into the body of the said DAVID LEE KINNAMON with a firearm."

**5.** Nevius was charged under Nev.Rev.Stat. 200.010 (1987), which defines murder as "the unlawful killing of a human being, with malice aforethought," and Nev.Rev.Stat. 200.030(1)(b) (1987), which defines first degree murder as "murder which is committed in the perpetration or attempted perpetration of ... robbery."