996 F.2d 1226
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Larry P. PARROTT, Petitioner-Appellant,
v.
A.J. ARAVE, Warden I.M.S.I., Respondent-Appellee.
 No. 91-35850.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 14, 1992.
Decided June 30, 1993.
 
 1
 Before: WRIGHT, FLETCHER, and CANBY, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Idaho prisoner Larry Peter Parrott appeals the district court's denial of his petition under 28 U.S.C. § 2254 for a writ of habeas corpus. Parrott contends that he was deprived of his Sixth Amendment right to effective assistance of counsel. Parrott also maintains that the district court abused its discretion in failing to hold an evidentiary hearing on his claim and in failing to appoint counsel for Parrott. Because we are convinced that Parrott was not prejudiced by his trial counsel's conduct, we affirm the district court's denial of Parrott's petition.
 
 DISCUSSION
 
 4
 We review de novo the district court's denial of Parrott's habeas corpus petition. Nevius v. Sumner, 852 F.2d 463, 466 (9th Cir.1988), cert. denied, 490 U.S. 1059 (1989). Because the district court rejected the petition without holding an evidentiary hearing, we may affirm only if Parrott has failed to allege facts that, if true, would entitle him to relief. Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir.1992) (citing Creech v. Arave, 947 F.2d 873, 887 (9th Cir.1991), cert. denied, 113 S.Ct. 1840 (1993)). We conclude that Parrott has failed to make the requisite showing.
 
 
 5
 Parrott's Allegations of Ineffective Assistance of Counsel
 
 
 6
 To prevail on his claim of ineffective assistance of counsel, Parrott must demonstrate (1) that his trial attorney's actions were "outside the wide range of professionally competent assistance," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-90, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Whether the facts alleged by Parrott satisfy the performance and prejudice components of the ineffectiveness inquiry is a question that we review de novo. United States v. Layton, 855 F.2d 1388 (9th Cir.1988), cert. denied, 489 U.S. 1046 (1989).
 
 
 7
 The record supports to a limited degree Parrott's assertion that defense counsel Wilson's conduct fell below an objectively reasonable standard of performance. In none of the instances of ineffective assistance that Parrott alleges, however, was Wilson's performance so egregiously deficient as to undermine our confidence in the outcome of the trial.
 
 
 8
 1. Failure to impeach the victim with a prior inconsistent statement
 
 
 9
 Wilson's failure to impeach Lilia Garcia with a purported prior inconsistent statement is not an instance of ineffective assistance of counsel. The statement is contained in a report that a police officer made the day after the alleged offense occurred. The report was a summary of a police investigation and not a statement written or dictated by Garcia herself. The day after the alleged offense occurred, Garcia wrote a statement in which she averred:
 
 
 10
 All I can recall is having swallowed twice from my glass. The next thing I recall is that it was dark outside, I felt dizzy and Larry was shoving me and hitting me on the head with his fists, shoving me towards the bedroom.
 
 
 11
 Had Wilson attempted to impeach Garcia with the police report, the state could have used Garcia's own written statement to rehabilitate her credibility. Fed.R.Evid. 801(d)(1)(B). Omitting to impeach Garcia with the police report does not constitute conduct that falls below an objective standard of reasonableness. See Strickland, 466 U.S. at 688. Nor is there a reasonable probability that, but for the omission, the result of the trial would have been different. See id. at 694.
 
 
 12
 2. Failure to investigate and present evidence of drug use
 
 
 13
 a. Implication that Parrott drugged Garcia
 
 
 14
 At three points in the trial the state alluded to indications that Parrott had drugged Garcia. The magistrate and district court concluded that the jury could have inferred from these allusions that Parrott had drugged Garcia. We agree. Nevertheless, we find no deficient performance by counsel.
 
 
 15
 Wilson did nothing to challenge the state's implication that Parrott had drugged Garcia, causing her to black out. Because the state did not attempt overtly to prove that Parrott had drugged Garcia, Wilson's inaction was not unreasonable: attempting to refute the implication could have had the effect of highlighting an issue that would incriminate Parrott.
 
 
 16
 b. Evidence of diminished capacity
 
 
 17
 Parrott maintains that Wilson's failure to impeach Garcia with evidence that she was under the influence of a combination of prescription medications that produced hallucinations or affected her memory constitutes ineffective assistance. Wilson did not investigate the frequency with which or under what circumstances the drugs in Garcia's system cause hallucinations or blackouts, nor does the record contain any data regarding these questions.
 
 
 18
 In this case, where the sole defense was that Garcia was lying, failing to impeach her credibility with evidence that, when the alleged offense occurred, Garcia's memory or perceptive capacities were diminished may fall below an objective standard of reasonableness. We are not persuaded, however, that there is a reasonable probability that but for Wilson's failure to impeach Garcia with evidence of drug ingestion, the result of the proceeding would have been different. Strickland, 466 U.S. at 687. When viewed in the context of the entire record, particularly Lilia Garcia's testimony, evidence supporting a suggestion that Garcia might possibly have hallucinated the incident or have remembered the events of the evening incorrectly simply does not undermine our confidence in the guilty verdict.
 
 
 19
 The jury was made aware through Garcia's own admission that she had ingested medication, subsequently consumed alcohol, and blacked out. Garcia testified that the offense occurred after she awakened from the blackout. Under both direct and cross-examination, Garcia demonstrated a detailed and specific recollection of the events that took place before and after her blackout. We conclude, therefore, that Parrott was not prejudiced by Wilson's failure to introduce evidence that Garcia may have been under the influence of drugs that might produce hallucinations or blackouts.
 
 
 20
 3. Failure to introduce photographs as evidence of lack of injury
 
 
 21
 Wilson's failure to introduce six photographs of Garcia, taken the day after the alleged assault, was not objectively unreasonable, and Parrott was not prejudiced by Wilson's omission. Proof that Garcia was physically injured during the assault was not essential to the state's case. In fact, the state elicited Officer Garey's testimony to the effect that, a few hours after the incident, Garcia exhibited only minor injuries:
 
 
 22
 [W]e did notice there was some minor bruises--one right here up towards her chest area (indicating), and on her arm there was one. And she complained of one up here (indicating). It wasn't visible, but there was a bump up there, but it was nothing you could observe.
 
 
 23
 The fact that Garcia did not emerge from the incident heavily bruised does not damage the credibility of her testimony. Garcia testified that Parrott shoved her and hit her on the head and face, that he squeezed her cheek in his hand, that she was frightened by his threats and warnings to obey, and that he held her by the back of the head and forced her to perform fellatio on him. In testimony elicited by the state, Garcia averred that Parrott's blows resulted in "[a] swelling on the left-hand side of my forehead, and bruises on the lower and upper part of my left hand, and left arm, and on the chest." On cross-examination Garcia testified that Parrott's blows to her head had landed "[m]ostly around the back of my head." Garcia's testimony did not paint a portrait of a victim severely battered and beaten.
 
 
 24
 Garcia and Officer Garey's descriptions convey the impression that Garcia's injuries were only minimally visible. Introduction of the photographs could hardly have damaged Garcia's credibility. Wilson's non-use of the photographs does not constitute ineffective assistance.
 
 
 25
 4. Failure to object to trial testimony regarding drugs in Parrott's home
 
 
 26
 Wilson's failure to object, on the ground that it was inadmissible character evidence, to the state's questioning a witness regarding drugs in Parrott's home does not constitute ineffective assistance. Regardless of Wilson's reason for remaining silent during the testimony, his decision not to object to the single question regarding drugs in Parrott's home was a reasonable tactic. Objecting could have had the effect of impressing on the jury's mind the fact that a witness claimed to have seen drugs in Parrott's home.
 
 
 27
 Even if we believed that Wilson's failure to object amounted to deficient conduct, moreover, we would not conclude that the failure was so egregious as to undermine our confidence in the outcome of the trial. Throughout the trial, witnesses for the prosecution offered testimony that cast Parrott's character in an unfavorable light: Parrott himself admitted that he had lied to a police detective when questioned about the incident and that he had driven under the influence of alcohol on the evening of the alleged incident; the same witness who testified that she had seen illegal narcotics in Parrott's home also testified that she had, at Parrott's request, written a false statement regarding the events of the evening. The incremental prejudicial effect of the witness's testimony regarding illegal narcotics in Parrott's home is negligible and falls far short of the Strickland standard.
 
 
 28
 5. Eliciting inconsistent testimony from defense witnesses
 
 
 29
 Parrott alleges that Wilson's choice of whom to call as a defense witness and his failure to rehabilitate defense witnesses whose credibility had been challenged constitute ineffective assistance of counsel. While we agree that Wilson's handling of defense witnesses falls below an objectively reasonable standard of performance, we are not convinced that Parrott has demonstrated a reasonable probability that had the witnesses not testified, or had Wilson taken steps to rehabilitate them when their credibility was challenged, Parrott would not have been found guilty.
 
 
 30
 Defense witnesses offered confused and inconsistent accounts that occurred on the evening of the alleged incident. They gave the state the opportunity to emphasize unsavory aspects of Parrott's character and they failed seriously to damage Garcia's credibility or to enhance the credibility of Parrott's version of the events.
 
 
 31
 Nevertheless, in view of the entire trial record, we cannot conclude that Parrott was prejudiced by his attorney's handling of the witnesses. The prosecution took advantage of the witnesses to bring out the fact that Parrott was something less than the model citizen, but none of the witnesses commented directly on Parrott's reputation for veracity. A witness for the state, a fifteen year-old, had already testified that she had seen illegal narcotics in Parrott's home and that she had at Parrott's request written a false account of the events of the evening. In addition, the state had elicited Parrott's admission that he was intoxicated on the night of the alleged incident, that he had driven under the influence of alcohol on that evening, and that he had lied to a police detective about the events in question. Wilson's handling of the defense witnesses was not, in view of other testimony at the trial, so prejudicial as to undermine our confidence in the guilty verdict.
 
 
 32
 6. Failure to call a potentially exculpatory witness
 
 
 33
 Similarly, while we agree that Wilson's failure to attempt to find and interview Artemio Galvan, a potentially exculpatory witness, was objectively unreasonable, we reject Parrott's assertion that this omission was so prejudicial as to satisfy the Strickland prejudice standard.
 
 
 34
 Parrott maintains that Garcia fabricated the oral copulation charge after Parrott had, on suddenly realizing the effect it would have on his friendship with Galvan, interrupted sexual intercourse that Garcia had initiated. Garcia testified that Galvan had telephoned her at 1:00 a.m. on the night of the alleged incident, that Galvan was the first person she spoke with after the alleged attack, and that she had informed him of the incident then.
 
 
 35
 The state called Artemio Galvan's mother, Maria Galvan, who testified that she had no knowledge that Artemio had a friend named Larry Parrott and that, contrary to Parrott's earlier testimony, Artemio Galvan did not have children. During closing arguments, the state alluded to Maria Galvan's testimony as evidence that Parrott and Galvan were not close friends and therefore that it was unlikely that Parrott had refrained from carrying out sexual intercourse because of compunctions arising from his friendship with Artemio.
 
 
 36
 Wilson has stated that the reason he did not contact Artemio Galvan is that he saw a statement in the case file to the effect that Galvan considered Larry Parrott "a rotten crumb, and that he didn't like him; that he was sure that he was drugged, and some other things like that." The record contains a statement that Galvan made to the police in which Galvan asserted that he believed that he was drugged and that "I cannot be a friend to such an individual of that sort."
 
 
 37
 Wilson never contacted Artemio Galvan and thus could not have known whether Galvan's testimony would have helped or hurt the defense. Wilson's failure to interview a potential defense witness, who was the first witness to speak with Garcia following the alleged incident, qualifies as assistance that falls below the objective standard of reasonableness. However, it is not reasonably probable that, but for Wilson's failure to interview Galvan and call him to testify, the result of the trial would have been different. Lilia Garcia testified herself that Artemio Galvan had told her that Parrott was an old friend with whom he had gone to school and that he had met him again in college. She stated that most of the afternoon and evening Artemio and Parrott had talked about "going to school together, and how they met, the rough times that each one of their families had had." Garcia's testimony supported Parrott's characterization of the length and depth of his friendship with Artemio Galvan. Even if Wilson had contacted Galvan and Galvan had corroborated Parrott's and Garcia's testimony, it is unlikely that the outcome of the trial would have been different.
 
 CONCLUSION
 
 38
 We agree with Parrott that his trial counsel's performance was deficient with respect to some, but not all, of the matters raised by Parrott. We are satisfied, however, that Parrott's trial counsel's conduct did not prejudice Parrott. Parrott has not demonstrated that, but for his attorney's errors and omissions, the jury would have returned a verdict of not guilty. Because we conclude that Parrott has not alleged facts that, if proved true, would entitle him to relief, we need not proceed to the question of whether Parrott received a full and fair hearing in state court on these claims. Parrott is not entitled to an evidentiary hearing.
 
 
 39
 We AFFIRM the judgment of the district court.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3