Thomas **NEVIUS,** Petitioner–Appellant,

v.

**E.K. McDANIEL,** Warden, **Respondent–Appellee.**

No. 00–99009.

United States Court of Appeals, Ninth Circuit.

Submitted May 1, 2000 [1]

Filed May 31, 2000

---

1. The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed. R.App. P. 34(a)(2).

Michael Pescetta, Assistant Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

Dorothy Nash Holmes, Deputy Attorney General, Carson City, Nevada, for the respondent-appellee.

Before: CANBY, BOOCHEVER, and KLEINFELD, Circuit Judges.

## ORDER

Thomas Nevius, a Nevada prisoner under sentence of death, seeks a certificate of appealability to permit him to appeal the district court's denial of his successive petition for habeas corpus, filed pursuant to 28 U.S.C. § 2254. Because Nevius seeks to appeal after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), he cannot appeal unless a circuit justice or circuit or district judge issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c). *See Slack v. McDaniel,* —— U.S. ——, ——, 120 S.Ct. 1595, 1600, 146 L.Ed.2d 542 (2000); Fed. R.App. P. 22(b)(1). The district court denied a certificate, and Nevius then applied to this court for one. *See* Fed. R.App. P. 22(b)(2); 9th Cir. R. 22–1(c), 22–4. We deny the certificate.

### I. *Nevius's Prior Appeals.*

Because most of the claims that Nevius now attempts to appeal have been foreclosed by earlier decisions, it is necessary to set forth at some length the course of Nevius's litigation. Nevius was convicted of murder in Nevada state court in November 1982, and was sentenced to death. The facts of the offense are set out in the opinion of the Nevada Supreme Court, which affirmed his conviction. *See Nevius v. State,* 101 Nev. 238, 699 P.2d 1053 (1985). Nevius next sought collateral relief in state court, which was denied at the trial level and, without opinion, on appeal. Nevius then filed a petition for habeas corpus in federal district court, which de-

nied the petition. Nevius appealed to us and we affirmed. *See Nevius v. Sumner,* 852 F.2d 463 (9th Cir.1988) ("*Nevius I*"), *cert. denied,* 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989).

Among the contentions we rejected in *Nevius I* was the claim that the prosecution's use of peremptory challenges to remove black jurors from the jury violated the Sixth and Fourteenth Amendments. Nevius's conviction and direct appeal had become final before the United States Supreme Court decided *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Batson* was not retroactive, *see Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). We therefore addressed Nevius's claim under the standard of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and held that Nevius had not shown that the prosecutor's use of peremptory challenges violated his constitutional rights as delineated in *Swain. See Nevius I,* 852 F.2d at 466–69. We noted that, in oral argument, Nevius's counsel referred to alleged post-trial remarks of the prosecutor that were cause for concern, but those remarks appeared nowhere in the record. We accordingly could not address them. *See id.* at 469–70. Finally, we held that the prosecutor's emotional final argument, which had not been objected to, did not violate Nevius's constitutional rights. There was no showing of cause and prejudice, *see Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and "any error could have been cured by contemporaneous objection." *Nevius I,* 852 F.2d at 470.

Nevius then returned to state trial court and sought a writ of habeas corpus. He restated his *Swain* claim of discriminatory peremptory challenges, and sought to bolster his case with the alleged oral post-trial statements of the prosecutor. The state trial court denied his petition, and Nevius both appealed to, and filed an original habeas petition with, the Nevada Supreme Court. That Court consolidated the

proceedings. In addition to his *Swain* contention, Nevius claimed ineffective assistance of counsel at trial and on appeal, and also challenged the constitutionality of the reasonable doubt instruction given to the jury at his trial. The Nevada Supreme Court rejected all three claims, holding that they were defaulted because they had either been raised and decided previously or were new claims that should have been raised in previous proceedings. In addressing Nevius's attempt to show cause and prejudice for his default, the Nevada Supreme Court ruled that Nevius had failed to show prejudice: Nevius's counsel's assertions concerning the prosecutor's post-trial statements were not credible, and any alleged ineffectiveness of counsel had caused no harm. ·*Nevius v. McDaniel,* No. 29028, 999 P.2d 393, Order Dismissing Appeal and Denying Petition for Writ of Habeas Corpus (Nev. Oct. 9, 1996).

While these matters were pending in the Nevada Supreme Court, Nevius returned to federal district court and attempted to file a second federal habeas corpus petition. Because Congress had enacted AEDPA by this time, the district court held that Nevius could not file the petition without the permission of this court. *See* 28 U.S.C. § 2244(b)(3). The district court also denied a certificate of appealability. Nevius then: (1) filed a notice of appeal of the district court's decision and requested a certificate of appealability from this court; (3) moved this court to recall the mandate it had issued eight years previously in *Nevius I,* and (4) in the alternative, requested this court's permission to file a successive petition.

We granted the certificate of appealability, but held that the district court had been correct in holding that Nevius's petition was successive, and could not be filed without leave of this court. *See Nevius v. Sumner,* 105 F.3d 453 (9th Cir.1996) ("*Nevius II* "), *cert. denied,* 527 U.S. 1006, 119 S.Ct. 2344, 144 L.Ed.2d 241 (1999). We rejected Nevius's contention that his first petition should be disregarded be-

cause it was filed by his original trial counsel, who had a conflict of interest that prevented him from asserting ineffectiveness of trial counsel in that first habeas proceeding. Nevius relied on *Deutscher v. Angelone,* 16 F.3d 981 (9th Cir.1994), in which we held that a petition that had been filed by a prisoner's lawyer without notice to, or authorization by, the prisoner was a nullity, and that a later petition was therefore the prisoner's first petition. Nevius's first petition, we held, was fully authorized and not a nullity. *See Nevius II,* 105 F.3d at 458–59. We also rejected Nevius's argument that he should be able to raise the ineffectiveness claim in his second petition because that was the first opportunity in which he was represented by counsel who had not represented him at trial. That argument, we held, was foreclosed by our decisions in *Bonin v. Calderon,* 77 F.3d 1155 (9th Cir.1996), and *Moran v. McDaniel,* 80 F.3d 1261 (9th Cir. 1996).

We also denied Nevius's motion to recall our mandate so that we could address the claims now set forth in his second federal habeas petition. We held that recall of the mandate, which was neither infirm when issued nor rendered infirm by subsequent decisions of the Supreme Court, was inappropriate. Such a recall would be an evasion of the limits placed on successive petitions by the Supreme Court in *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), and by Congress in AEDPA, 28 U.S.C. § 2244(a), (b). *Nevius II,* 105 F.3d at 461.

We did, however, authorize Nevius to file a second habeas petition in the district court. *Id.* at 462. We held that Nevius had made a prima facie showing that his claim concerning the reasonable doubt instruction "relie[d] on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A). Nevius's prima facie case was based on the Supreme Court's decision in *Cage v. Louisiana,* 498 U.S. 39,

111 S.Ct. 328, 112 L.Ed.2d 339 (1990), holding that due process did not permit reasonable doubt instructions that "suggested a higher degree of doubt than is required for acquittal under the reasonable doubt standard." *Id.* at 41, 111 S.Ct. 328. It was at least arguable that the Supreme Court made *Cage* retroactive when it vacated a decision of the Eleventh Circuit holding *Cage* not retroactive. *See Adams v. Evatt,* 511 U.S. 1001, 114 S.Ct. 1365, 128 L.Ed.2d 42 (1994) (vacating and remanding for reconsideration in light of *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). On this prima facie showing, we authorized Nevius's second federal petition "[w]ithout intimating any view concerning the merits of Nevius' *Cage* claim, or any view regarding whether he has in fact met the requirements of 28 U.S.C. § 2244(b)." *Nevius II,* 105 F.3d at 462.

In a separate order, we held that, because 28 U.S.C. § 2244(b)(3) refers to our permitting the district court to consider a second or successive *application,* our grant of permission to file a second petition authorized the filing of the entire petition, not just the reasonable-doubt-instruction claim that met the requirement of § 2244(b)(2)(A). *See Nevius v. McDaniel,* 104 F.3d 1120 (1996) (*"Nevius III"*). The district court, however, had the duty under § 2244(b)(1) and (2) to examine each claim of the second petition and to dismiss the claims that did not meet the requirements of those subsections. *See id.* at 1121.[2]

Shortly after our remand to the district court, Nevius sought to file a supplemental petition for original habeas corpus in the Nevada Supreme Court. The Nevada Supreme Court addressed and rejected Nevius's claim that the scheduling of his execution three times, with stays granted shortly before the execution date, constituted cruel and unusual punishment in violation of the Eighth Amendment. *Nevius v. Warden,* Order Denying Rehearing, Nos. 29027, 29028 (Nev. July 17, 1998).

## II. *Nevius's Current (Second) Habeas Petition.*

The district court followed our mandate in *Nevius II* and examined in light of AEDPA each claim presented by Nevius's second habeas petition. Of the five claims presented by Nevius, the district court rejected three as not meeting the requirements for a successive claim under § 2244(b)(1) and (2). The remaining two claims it rejected on the merits as not meeting the standards for granting habeas relief under § 2254(d)(1), (2), and (e)(1). We conclude that the district court was correct and that none of the claims now presents "a substantial showing of the denial of a constitutional right" as required by § 2253(c)(2) for the issuance of a certificate of appealability. We address the claims one by one.

■ The claim that led us to grant Nevius permission to file a second petition was that the reasonable doubt instruction given at his trial was unconstitutional under the standard later set by the Supreme Court in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). That claim has been entirely undermined by our subsequent decision in *Ramirez v. Hatcher,* 136 F.3d 1209 (9th Cir.), *cert. denied,* 525 U.S. 967, 119 S.Ct. 415, 142 L.Ed.2d 337 (1998). There we upheld the constitutionality, under *Cage* and *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), of a Nevada reasonable doubt instruction identical to the one given at Nevius's trial. The law of this circuit thus forecloses Nevius's claim that his reasonable doubt instruction was unconstitutional.

**2.** After our decision in *Nevius II,* Nevius returned to the Nevada Supreme Court and moved to disqualify one of its Justices from any consideration of his case. That motion was denied, *Nevius v. Warden,* 113 Nev. 1085, 944 P.2d 858 (1997), *rehearing denied,* 114 Nev. 664, 960 P.2d 805 (1998), *cert. denied,* 525 U.S. 1108, 119 S.Ct. 878, 142 L.Ed.2d 778 (1999). These rulings are not challenged in Nevius's present habeas petition.

Nevius contends that *Ramirez* should not control his case because *Ramirez* did not involve a death penalty. *Ramirez,* however, focused clearly on the words of the challenged instruction, and concluded that there was "no reasonable likelihood that the jury understood the instruction" to lower the government's burden of proof below the level of reasonable doubt. *Ramirez,* 136 F.3d at 1214. That is the test that *Ramirez* derived from *Cage* and *Victor,* both of which involved death sentences. *Ramirez* also recognized that, if there were a reasonable likelihood that the jury understood the instructions to lower the government's burden below that of reasonable doubt, the writ would have to issue; "there can be no harmless error in this context." *Ramirez,* 136 F.3d at·1211. Nevius has offered neither authority nor reason to support his contention that this standard of constitutionality would be any different for a death penalty case than for a case involving imprisonment. We conclude that the district court did not err in rejecting Nevius's *Cage* claim, or in denying a certificate of appealability for lack of "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

■ Nevius's petition also presented two claims that his constitutional rights were violated by the prosecution's use of peremptory challenges: one claim that the prosecution systematically excluded blacks from all juries in which blacks were defendants, and one claim that the prosecution improperly excluded all blacks from Nevius's jury. These claims are both derived from *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and were rejected by this court in *Nevius I,* 852 F.2d at 466–69. Accordingly, the district court was required by AEDPA to dismiss them as claims that were "presented in a prior application." 28 U.S.C. § 2244(b)(1). Their dismissal violated no constitutional right of Nevius.

■ Another claim presented by Nevius's petition was ineffective assistance of counsel at trial and on appeal. This claim was not presented in Nevius's first federal petition, and accordingly must be dismissed under AEDPA unless: (1) it "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the· Supreme Court," § 2244(b)(2)(A); or (2) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," § 2244(b)(2)(B)(i), *and* "the facts underlying the claim ... would be sufficient to establish ... that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," § 2244(b)(2)(B)(ii). Nevius does not contend that his claim of ineffective assistance depends upon a new rule made applicable to his case by the Supreme Court, nor does he contend that, but for the alleged error, no reasonable factfinder would have found him guilty of first-degree murder. Thus, under AEDPA § 2244(b)(2), Nevius's claim of ineffective assistance must be dismissed.

■ Nevius contends, however, that· § 2244(b)(2) does not apply because his second petition should be considered his first petition. The reason, he asserts, is that his first petition was filed by the same attorney who represented him at trial and on direct appeal. A conflict of interest of the attorney thus rendered the first petition a nullity, according to Nevius. This argument, however, is precisely the one that we considered and rejected in *Nevius II,* where we refused to accept Nevius's analogy to *Deutscher v. Angelone,* 16 F.3d 981 (9th Cir.1994). *See Nevius II,* 105 F.3d at 457–59. The district court did not err in considering the issue foreclosed by our prior decision.

In another variation of his argument, Nevius contends that he must be forgiven his failure to raise ineffective assistance in his first petition because he could not present his claim until he was represented by a lawyer other than the one that represented him at trial and on appeal. Because his

trial lawyer could not have been expected to present a claim of ineffective assistance, Nevius argues that he should not be considered to have defaulted by failing to present such a claim in his first federal petition. Again, we addressed and rejected that precise claim in *Nevius II*, where we considered the issue foreclosed by *Bonin v. Calderon*, 77 F.3d 1155 (9th Cir. 1996), and *Moran v. McDaniel*, 80 F.3d 1261 (1996). The district court properly regarded the issue as settled against Nevius by our decision and by § 2244(b)(2). It accordingly did not err in rejecting the ineffective assistance of counsel claim, and Nevius has failed to make the showing of denial of a constitutional right to permit issuance of a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

■ The final claim presented in Nevius's second habeas petition is that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment. The cruel and unusual punishment, according to Nevius, was the repeated scheduling of his execution, to be followed by last-minute stays. The first execution warrant set the execution for the week beginning February 14, 1986, and prison authorities scheduled the execution for February 20, 1986. Execution was stayed by the federal district court only one day before the scheduled date. After federal proceedings on Nevius's first petition were concluded, Nevius returned to state court. After the state trial court had denied collateral relief, and while an appeal was pending to the Nevada Supreme Court, the state trial court issued another warrant for execution during the week of September 9, 1996; prison authorities set the date as September 10. Nevius was moved to a different prison for the execution, but the Nevada Supreme Court issued a stay on August 23, 1996. After the Nevada Supreme Court denied relief, but while a petition for rehearing was pending and Nevius's second federal habeas petition

was pending, the state court issued another warrant of execution for the week beginning January 13, 1997. The Nevada Supreme Court stayed that execution on January 7, 1997.

Nevius contends that the actions of the state executive officials in seeking death warrants, and the state courts in issuing them, while proceedings were pending inflicted unnecessary pain and psychological torture, in violation of the Eighth Amendment and several instruments of international law, including the Universal Declaration of Human Rights, and the Convention against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. Because of this past psychological torture, argues Nevius, his further punishment by execution would constitute cruel and unusual punishment.

The Nevada Supreme Court addressed and rejected Nevius's claim of cruel and unusual punishment in denying his supplemental original habeas petition. After reciting Nevius's allegations that the state sought death warrants merely to inflict psychological torture upon him, the Nevada Supreme Court held:

> We conclude that the state in seeking the death warrants and the district court in issuing them acted within their statutory authority. *See* NRS 176.491(2). We also conclude that staying an execution six days before it could be carried out in no way amounts to a "mock execution," as Nevius contends. We have reviewed the authorities cited by Nevius, and none of them stand[s] for the proposition that the issuance of the death warrants and stays of execution he experienced constituted cruel and unusual punishment.

Order Denying Rehearing, at 2.

We agree with the district court that we are required to defer to this ruling of the Nevada Supreme Court.[3] AEDPA provides:

---

**3.** Nevius's claim of cruel and unusual punishment was not raised in his first petition, but he contends that it must now be treated as if raised in a first petition because it was not

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2). We conclude that neither condition is met by Nevius's torture claim.

■ A state court decision is "contrary to" federal law established by the Supreme Court "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, — U.S. —, —, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Nevius does not point to any Supreme Court decision determining law that is contrary to the decision of the Nevada Supreme Court. He argues that torture is clearly a violation of federal and international law. But he offers no authority for the proposition that setting an execution date that is stayed so that judicial proceedings can be completed amounts to torture or cruel and unusual punishment under

either law or under any decision of the United States Supreme Court. Even more to the point, he does not refer us to any decision holding that his ultimate execution would be rendered cruel and unusual by the past occurrences. The most relevant Supreme Court case on that point is *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947), which upheld an execution by electric chair after an earlier attempt failed to cause death. The Court stated:

> Petitioner's suggestion is that because he once underwent the psychological strain of preparation for electrocution, now to require him to undergo this preparation again subjects him to a lingering or cruel and unusual punishment. Even the fact that petitioner has already been subjected to a current of electricity does not make his subsequent execution any more cruel in the constitutional sense than any other execution.

*Id.* at 464, 67 S.Ct. 374. This ruling is certainly consistent with that of the Nevada Supreme Court in Nevius's case.

Nor did the Nevada Supreme Court "unreasonably appl[y]" the clearly established law to the facts of Nevius's case. *Williams,* — U.S. at —, 120 S.Ct. at 1523. Nevius's first execution date was set after his conviction became final by the exhaustion of his direct appeal and the denial of rehearing by the Nevada Supreme Court. This is not an unusual procedure. The federal district court stayed the execution after Nevius filed his first federal habeas petition.

The other two execution dates were set after Nevius's first federal petition had

---

ripe when he brought his first habeas petition. He relies on *Stewart v. Martinez–Villareal*, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), in which the Supreme Court held that a claim of incompetence to be executed, which had not been ripe when first presented, could be treated as a first-petition claim even though the petitioner had filed previous federal petitions. The State, however, argued in district court that Nevius could have asserted his claim in his first petition, because the first

stay of execution had already issued at that time. The State contends that this claim accordingly is subject to the restrictions of 28 U.S.C. § 2244(b)(2). We find it unnecessary to resolve this question because we conclude, as did the district court, that issuance of a writ on Nevius's claim is precluded by 28 U.S.C. § 2254(d). For purposes of that ruling, we assume, without deciding, that Nevius's cruel and unusual punishment claim may be treated as a first-petition claim.

been denied, the denial had been affirmed on appeal, and the Supreme Court had denied certiorari. The fact that Nevius was pursuing successive collateral petitions in state and federal court did not render the state's action in setting a new execution date either unusual or unreasonable. Although we do not minimize the anxiety caused by the setting and staying of three execution dates over a period of eighteen years, Nevius has not demonstrated that the decision of the Nevada Supreme Court refusing to overturn his death sentence on that ground "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Nor was the Nevada Supreme Court's decision "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Nevada Supreme Court's decision was based on the facts presented in Nevius's supplemental original habeas petition. Those facts failed to establish that his execution would violate federal law. We agree with the district court that, under applicable Supreme Court precedent and AEDPA, discovery and an evidentiary hearing concerning the setting and staying of past execution dates would not affect that conclusion.

We conclude, therefore, that Nevius has failed to make a substantial showing that his execution will constitute cruel and unusual punishment. He has similarly failed to make a substantial showing that rejection of any of his other claims denied him a constitutional right. Nevius therefore does not meet the requirements for issuance of a certificate of appealability under § 2253(c)(2). Reasonable jurists would not find the district court's rulings on the merits to be debatable or wrong. *See Slack v. McDaniel,* —— U.S. at ——, 120 S.Ct. at 1604. To the extent that the district court's decision rests on procedural grounds, reasonable jurists would not find it debatable whether Nevius had raised "a valid claim of the denial of a constitutional right," nor would they "find it debatable whether the district court was correct in its procedural ruling[s]." *Id.* Accordingly, we deny Nevius's application for a certificate of appealability.

**CERTIFICATE OF APPEALABILITY DENIED.**