UNITED STATES of America, Appellee,

v.

Pamela M. JENSEN and Larry A. Tignor, Appellants.

Nos. 76–2058, 76–2059.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 6, 1977.

Decided Sept. 30, 1977.

Karl J. Keffler, St. Louis, Mo., for appellants.

Barry A. Short, U. S. Atty., and David M. Rosen, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Pamela M. Jensen and Larry A. Tignor appeal from their convictions after a jury trial for harboring a fugitive in violation of 18 U.S.C. § 1071. They each received a sentence of three years. On appeal Jensen and Tignor contend the trial court[1] committed reversible error in failing: to suppress appellants' statements due to governmental delay in bringing them before a magistrate; to dismiss due to insufficiency of the evidence; and to give a proper instruction concerning the definition of reasonable doubt. For the reasons given below we affirm the conviction.

The evidence adduced at trial by the government showed that the FBI had been engaged since 1973 in an attempt to locate and apprehend a fugitive named Lonnie Rife. The FBI had obtained a warrant for Rife's arrest pursuant to 18 U.S.C. § 1073 when he failed to appear for sentencing on an aggravated assault conviction in the state of Illinois. FBI Agent Elyon Davis stated that on numerous occasions between 1973 and 1976 he contacted appellants Jensen and Tignor in the search for Rife and informed them of Rife's fugitive status.

Evidence introduced by the defense reveals that on July 27, 1976, Lonnie Rife telephoned appellant Jensen and requested her to bring a boat to Hoppe's Boat Marina, near St. Louis, Missouri. According to Jensen, she then called appellant Tignor and told him to bring the boat to the marina. Tignor, who had been working on the boat, subsequently transported it to Hoppe's Marina on the same day. On July 28, 1976, Rife met Jensen, Tignor and one of their friends, Bob Badgley, at Hoppe's Marina. Rife, Jensen and Badgley proceeded to pilot the boat south on the Mississippi River. Tignor drove a recreational vehicle to the Huckstep Marina at Cape Girardeau, which is south of St. Louis, for the purpose of arranging refueling for the boat.

During the morning of July 28, 1976, the FBI received information about the activities of fugitive Rife and arranged for the Cape Girardeau Police Department to check the Huckstep Marina. Federal agents could not reach Cape Girardeau in time to intercept the boat. At approximately 1:50 p. m. on July 28, the boat arrived at the Huckstep Marina and Lieutenant Boyd and two other officers of the Cape Girardeau police arrested Jensen, Tignor, Rife and Badgley.[2]

FBI agents arrived at the Cape Girardeau Police Station at approximately 2:30 p. m. on July 28, during the time Jensen and Tignor were being fingerprinted and photographed. The FBI agents took custody of Rife but did not talk with appellants that day. At approximately 9:00 a. m. the following day, July 29, the FBI, after consultation with the Assistant United States Attorney regarding the filing of a harboring violation, placed a "federal hold" precluding appellants' release from state custody until they could be transferred to a federal facility. FBI Agents Lummus and Gorham began questioning Jensen and Tignor at about 9:30 a. m.

Prior to questioning, appellants were given full *Miranda* warnings. Neither was willing to sign a form waiving their rights. Nonetheless, according to FBI Agent Lummus, Jensen and Tignor stated that they understood their rights and had no objection to answering questions. Both defendants then made oral statements. Jensen acknowledged that she had been arrested with Rife, Tignor and Badgley on a dock where she had arrived by speedboat and that she had been in the boat with Rife. She refused to answer questions concerning her awareness that Rife was a fugitive. Tignor admitted that he transported a speedboat to Hoppe's Marina and later met the boat at Cape Girardeau. Tignor further stated to Agent Lummus that he had been "staying at the residence formerly rented by Lonnie Rife and he was taking

---

1. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

2. Badgley was eventually released because he apparently did not have any knowledge that Rife was a fugitive.

care of Rife's kids while he was running from the law." Most significantly Tignor stated that "he knew Rife was a Federal fugitive."

The questioning of appellants was terminated by 10:30 a. m. on July 29, 1976. Sometime during the afternoon, the arrest warrant was issued by the United States Magistrate and received by the United States Marshal. On July 30, 1976, appellants were taken before a United States Magistrate for an initial appearance.

Appellants contend that the delay in presenting them to a magistrate was unnecessary and that the statements made during the delay were thus inadmissible under Fed. R.Crim.P. 5(a) and the Supreme Court's decisions in *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

■ "Cooperation between federal and state law enforcement officers within reasonable limits is to be encouraged * *." *United States v. Rose*, 541 F.2d 750, 758 (8th Cir. 1976). But the Supreme Court in *Anderson v. United States*, 318 U.S. 350, 355–56, 63 S.Ct. 599, 87 L.Ed. 829 (1943), has held that a federal-state working arrangement cannot be used to circumvent the requirement that an arrestee be taken before a magistrate without unnecessary delay.

After oral argument in this case, we stated the following in an order filed on May 6, 1977:

We are concerned with appellants' claim of unlawful, warrantless detention by state authorities pursuant to a working arrangement with the F.B.I. and the consequent delay in taking the defendants before a magistrate.

We remand this case to the district court for further proceedings to determine the voluntariness of the confessions in light of the requirements of 18 U.S.C.

§ 3501. The trial court is requested to determine whether there was improper collusion between the F.B.I. agents and state authorities with respect to the delay in taking defendants before a magistrate; whether the delay was reasonable or unreasonable; and, if unreasonable, whether the delay affected the voluntariness of the confessions or statements. *See United ed States v. Keeble*, 459 F.2d 757 (8th Cir. 1972), *rev'd on other grounds*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

Pursuant to our remand, a hearing before the district court was held on August 19, 1977. The district court made the following findings:

We specifically find there was no collusion or working arrangement whatever between the F.B.I. agents and the state authorities to hold defendants in custody prior to 9 A.M., July 29, 1976, the earliest time at which defendants were being held in custody at the instance of the F.B.I. Prior to that time defendants were under the exclusive control of the state authorities. The confessions and statements in question were made less than two hours following such detention. We further find there was no collusion between the F.B.I. agents and the state authorities with respect to any delay in taking defendants before a magistrate, that any delay was reasonable and in no event affected the voluntariness of the confessions or statements theretofore made.

■ We have reviewed carefully the record of the hearing held on August 19, 1977, and are convinced the district court's findings are not clearly erroneous. Accordingly, we hold that the delay in presenting the appellants to a magistrate was not unreasonable and that the statements made during the delay were admissible.[3]

■ Appellants next contend that there was insufficient evidence to show a specific intention to "harbor" or "conceal" a fugi-

---

3. We also reject appellants' claim that their statements were inadmissible because they were arrested without a warrant and held in state custody for more than 20 hours in violation of Mo.Ann.Stat. § 544.170. The state custody terminated when the federal hold was placed at approximately 9:00 a. m. on July 29, 1976. Appellants therefore were in state custody for less than 20 hours.

tive. Both Tignor and Jensen testified at trial that they thought Rife's state conviction for aggravated assault was "on appeal" and that he therefore was not a fugitive. Tignor stated that he had personally retained an attorney for Rife and ordered a transcript for Rife's appeal. Appellants also claim that they were merely present at the boat dock during Rife's arrest and that they did not engage in any act to conceal Rife from the police.

The government introduced the testimony of FBI Agents Elyon Davis and David Cunningham, who testified that on frequent occasions between 1973 and 1976 they informed both Jensen and Tignor that Lonnie Rife was a fugitive. The agents also informed appellants that a federal warrant for Rife's arrest had been issued and that anyone who harbored Rife would be subject to prosecution. Tignor admitted knowing that Rife was a fugitive.[4] Furthermore, the testimony of Rife, Jensen and Tignor outlines a course of conduct whereby Jensen and Tignor assisted Rife in using a speedboat to travel south on the Mississippi River with the apparent intention of reaching Helena, Arkansas. Viewing the evidence in the light most favorable to the government, we are satisfied that substantial evidence supported appellants' conviction.

Appellants also challenge the propriety of the instruction given by the district court to the jury on the issue of reasonable doubt, which states as follows:

> You are instructed that as to each defendant the burden to prove the charge contained in the information is upon the Government; that burden the Government assumes in the beginning and carries throughout to the end, and the Government can meet this burden only by showing to you the guilt of the defendant beyond a reasonable doubt.
>
> The Court further charges you that a reasonable doubt is a doubt based on reason, and which is reasonable in view of all

the evidence. And, if, after an impartial comparison and consideration of all the evidence, you candidly can say that you are not satisfied of the defendant's guilt, you have a reasonable doubt; and if, after such impartial comparison and consideration of all the evidence, you truthfully can say that you have an abiding conviction of the defendant's guilt, you have no reasonable doubt.

\* \* \* \* .\* \*

> The burden of proof, as you have been told, is upon the Government. Each defendant is presumed to be innocent until proven guilty. This presumption of innocence attends and protects each defendant throughout the trial unless it has been met and overcome by evidence coming forward in the case, and it makes no difference from which side it comes, which shows and establishes the guilt of the defendant beyond a reasonable doubt.

Because the instruction is not phrased in terms of the kind of doubt that would make a person hesitate to act, appellants assert it is defective. *Cf. Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). We agree.

This circuit has repeatedly stated that the definition of reasonable doubt should be phrased in terms of hesitation to act. *See United States v. Conley*, 523 F.2d 650, 655 (8th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976); *United States v. Dixon*, 507 F.2d 683, 684 (8th Cir. 1974), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976); *United States v. Williams*, 505 F.2d 947, 948–49 (8th Cir. 1974); *United States v. Cole*, 453 F.2d 902, 907–08 (8th Cir.), *cert. denied*, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); *United States v. Dunmore*, 446 F.2d 1214, 1221–22 (8th Cir. 1971), *cert. denied*, 404 U.S. 1041, 92 S.Ct. 726, 30 L.Ed.2d 734 (1972); *Friedman v. United States*, 381 F.2d 155, 160–61 (8th Cir. 1967). The instruction given in the instant case is confusing because it makes evaluation of reasonable doubt con-

---

4. Earl McFeeters, an Illinois state policeman, testified that on January 4, 1974, he attempted to arrest Lonnie Rife but that Rife escaped. According to McFeeters, Rife's escape was aided by Jensen, who threatened to shoot him with a rifle.

tingent upon whether one is "satisfied of the defendant's guilt" and upon whether one has "an abiding conviction of the defendant's guilt." Use of these phrases approaches a reasonable man's criterion rather than .the strict standard envisioned as "beyond a reasonable doubt."

Despite our dissatisfaction with the trial court's instruction on reasonable doubt, we are compelled to affirm the convictions under the circumstances of this case. Counsel for Jensen and Tignor failed to state distinctly the appropriate ground for his objection as required by Fed.R.Crim.P. 30,[5] and the use of similar instructions has not constituted plain error. *See United States v. Cole, supra,* 453 F.2d at 907–08; *United States v. Dunmore, supra,* 446 F.2d at 1222; *Friedman v. United States, supra,* 381 F.2d at 160–61. *See also United States v. Lawson,* 483 F.2d 535, 536–37 (8th Cir. 1973), *cert. denied,* 414 U.S. 1133, 94 S.Ct. 874, 38 L.Ed.2d 757 (1974). Trial of the case was uncomplicated and the evidence of guilt was strong.

Nevertheless, in prospective cases we will view with great concern the failure to give a proper instruction on the definition of reasonable doubt. This circuit has warned counsel and the district courts a sufficient number of times concerning the use of a correct instruction on reasonable doubt. Disregard of our mandate in the future will be considered inconsistent with substantial justice and the supervisory authority of the circuit.

Affirmed.

---

5. Counsel for appellants merely objected to the instruction on the basis that "it does not state that reasonable doubt is defined as a doubt and not a mere possibility of a belief." This contention was abandoned in this appeal.