Miguel A. RAMIREZ, Plaintiff–Appellant,

v.

Sherman HATCHER, Warden,
Defendant–Appellee.

No. 96–16209.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1997.

Submission Vacated June 4, 1997.

Resubmitted Jan. 8, 1998.

Decided Jan. 27, 1998.

**1210**

P. Danice Johnson and Michael Pescetta, Assistant Federal Public Defenders, Las Vegas, Nevada, for petitioner-appellant.

John E. Simmons, Senior Deputy Attorney General, Carson City, Nevada, for respondent-appellee.

Before: REINHARDT, HALL, and THOMPSON, Circuit Judges.

Opinion by Judge CYNTHIA HOLCOMB HALL; Dissent by Judge REINHARDT.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Miguel A. Ramirez, a Nevada state prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We consider in this opinion Ramirez's challenge to the definition of reasonable doubt in the trial court's jury charge.[1] Finding no constitutional error in the trial court's instructions, we affirm.

**I**

The Due Process Clause of the United States Constitution requires the government to prove every element of a charged offense beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). The jury charge in Ramirez's trial as it relates to reasonable doubt stated the following:

> The defendant is presumed to be innocent until the contrary is proved. This presumption places upon the State the burden of proving beyond a reasonable doubt every material element of the crime charged and that the defendant is the person who committed the offense.

> A reasonable doubt is one based on reason. *It is not mere possible doubt but is such a doubt as would govern or control a*

---

1. We affirm the district court's denial of relief with respect to Ramirez's other claims in a memorandum disposition filed concurrently with this opinion.

*person in the more weighty affairs of life.* If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. *Doubt to be reasonable must be actual and substantial, not mere possibility or speculation.*

If you have a reasonable doubt as to the guilt of the defendant, he is entitled to a verdict of not guilty.

(Emphasis added). Between 1967 and 1991, the definition of reasonable doubt in the second paragraph of the jury charge was codified at Nev.Rev.Stat. § 175.211 (hereinafter "the Nevada instruction").[2]

■ "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.'" *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) (quoting *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954)) (internal citation omitted). This court has previously held that the Nevada instruction comports with due process. *Darnell v. Swinney,* 823 F.2d 299, 302 (9th Cir.1987), *cert. denied,* 484 U.S. 1059, 108 S.Ct. 1012, 98 L.Ed.2d 978 (1988). Ramirez, however, seeks reconsideration of this holding in light of the Supreme Court's decisions in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), and *Victor.*

■ In evaluating the constitutionality of the jury charge, we must determine "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet" the requirements of due process. *Victor,* 511 U.S. at 6, 114 S.Ct. at 1243. If we find such a likelihood, then we must grant Ramirez's writ of habeas corpus; there can be no harmless error in this context. *See Sullivan v. Louisiana,* 508 U.S. 275, 280–81, 113 S.Ct. 2078, 2082–83, 124 L.Ed.2d 182 (1993).

**II**

■ Ramirez argues that the jury charge violated due process by equating reasonable doubt with: (1) "actual and substantial doubt"; and (2) "such a doubt as would govern or control a person in the more weighty affairs of life." We consider each contention in turn.

**A.**

We examine first Ramirez's contention that the Nevada instruction impermissibly equates "reasonable doubt" with "actual and substantial doubt," thus lessening the government's burden of proof below that required for due process. Although we recognize that a description of reasonable doubt as "substantial doubt" can be problematic, we conclude that the phrase as used in the Nevada instruction is unexceptionable.

Ramirez relies primarily on *Cage,* the only case in which the Supreme Court has held that a reasonable doubt instruction violated due process, to challenge the "substantial" language. In *Cage,* the trial court had instructed the jurors as follows:

[A reasonable doubt] is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty,* raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt.* It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty.*

498 U.S. at 40, 111 S.Ct. at 329 (emphasis provided by the Supreme Court). The Supreme Court held that "the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard." *Id.* at 41, 111 S.Ct.

---

**2.** The statute was amended in 1991 to omit the words "and substantial" from the last sentence

of the definition. Nev.Rev.Stat. § 175.211.

at 329. When the reference to "moral," as opposed to evidentiary, certainty was added into the equation, the Court determined that a reasonable juror "could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." *Id.*[3]

■ Although the use of the term "substantial" to describe reasonable doubt has been disfavored in this and other circuits both before and after *Cage,* inclusion of the term in a reasonable doubt instruction does not render the instruction unconstitutional when there is no reasonable likelihood that the jury misunderstood the government's burden of proving guilt beyond a reasonable doubt. *See, e.g., Beverly v. Walker,* 118 F.3d 900, 904 (2d Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Adams v. Aiken,* 41 F.3d 175, 182 (4th Cir. 1994); *Bias v. Ieyoub,* 36 F.3d 479, 481 (5th Cir.1994); *Darnell,* 823 F.2d at 302. Indeed, the instruction in *Cage* was constitutionally flawed not for its use of the term "substantial," but instead for its creation of "a downward swing in the prosecution's burden of proof: the instruction began appropriately with 'reasonable' doubt, moved to 'grave uncertainty,' and then to 'substantial' doubt, and concluded by suggesting that the jury

could convict on the basis of a 'moral certainty' rather than an evidentiary certainty." *Brown v. Cain,* 104 F.3d 744, 755 (5th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 1489, 137 L.Ed.2d 699 (1997).[4]

The Supreme Court in *Victor* repudiated any suggestion that "substantial doubt" terminology automatically renders a reasonable doubt instruction unconstitutional. *Victor,* 511 U.S. at 19–20, 114 S.Ct. at 1249–50. While recognizing that equating reasonable doubt with substantial doubt can be "somewhat problematic," the Court found the equation "unexceptionable" when used to distinguish a reasonable doubt from a speculative one rather than to describe a degree of doubt greater than that required for acquittal under the Due Process Clause. *Id.*[5]

That "substantial" in the Nevada instruction means "not seeming or imaginary" as opposed to "that specified to a large degree," *see id.,* 511 U.S. at 19, 114 S.Ct. at 1250, becomes clear upon reading the entire sentence in which the challenged term appears: "Doubt to be reasonable must be actual and substantial, *not mere possibility or speculation.*" (Emphasis added). The Supreme Court has expressly approved this contrast between reasonable doubt and "mere possi-

---

3. The Supreme Court has subsequently clarified that the proper standard is not whether jurors *could* have understood the instruction to lower the government's burden of proof, but instead whether there exists a *reasonable likelihood* that the jurors so understood the instruction. *See Victor,* 511 U.S. at 6, 114 S.Ct. at 1243; *Estelle v. McGuire,* 502 U.S. 62, 72–73 & n. 4, 112 S.Ct. 475, 482 & n. 4, 116 L.Ed.2d 385 (1991).

4. That the Supreme Court in *Cage* was concerned with this "downward swing" in the government's burden of proof, and not with use of the term "substantial" standing alone, is suggested by the Court's attention to the term only in connection with the "grave uncertainty" and "moral certainty" language. *Cage,* 498 U.S. at 41, 111 S.Ct. at 329–30. In fact, the Court did not even identify as suspect the trial court's description of a reasonable doubt as "one that is founded upon a real tangible substantial basis." *Id.* at 40, 111 S.Ct. at 329.

5. In *Victor,* the Supreme Court considered and rejected constitutional challenges to two state court definitions of reasonable doubt. The second, which equated reasonable doubt with "substantial doubt," read as follows:

'Reasonable doubt' is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, *to a moral certainty,* of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken. You may find an accused guilty upon the *strong probabilities of the case,* provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an *actual and substantial doubt* reasonably arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the State, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.
511 U.S. at 18, 114 S.Ct. at 1249 (emphasis provided by the Supreme Court).

ble doubt," and doubt that does not rise above pure speculation is not reasonable. *Victor*, 511 U.S. at 17, 114 S.Ct. at 1248–49; *see United States v. Artero*, 121 F.3d 1256, 1258 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1089, —— L.Ed.2d —— (1998). Given the direct contrast in the Nevada instruction between "substantial" doubt and mere possibility or speculation, it is unlikely that jurors would understand the term "substantial" to raise the quantum of doubt required for acquittal.[6] Accordingly, we find use of the term in the trial court's jury charge unexceptionable.

## B.

Ramirez also challenges the equation of reasonable doubt with "such a doubt as would govern or control a person in the more weighty affairs of life." This circuit has endorsed a definition of reasonable doubt as the kind of doubt that would cause a reasonable person to hesitate to act, *see United States v. Robinson*, 546 F.2d 309, 313–14 (9th Cir. 1976), and the Supreme Court has indicated that "the hesitate to act standard gives a commonsense benchmark for just how substantial [a reasonable] doubt must be." *Victor*, 511 U.S. at 20–21, 114 S.Ct. at 1250. Ramirez contends that Nevada's "govern or

control" instruction equates reasonable doubt with the kind of doubt that would cause a person to refrain from acting, and that the instruction therefore violates due process.

Nevada's "govern or control" instruction is really just the flip side of a "willingness to act" instruction, which defines proof beyond a reasonable doubt in the following (or some substantially similar) manner: "In order that the evidence submitted shall afford proof beyond a reasonable doubt, it must be such as you would be *willing to act* upon in the most important and vital matters relating to your own affairs." *Robinson*, 546 F.2d at 313.[7] The Supreme Court and various circuits have expressed disapproval of the "willingness to act" formulation of proof beyond a reasonable doubt. *See Holland*, 348 U.S. at 140, 75 S.Ct. at 137–38; *United States v. Nolasco*, 926 F.2d 869, 871 (9th Cir.1991).[8] The "willingness to act" formulation has come under attack primarily because "the most important decisions in life-choosing a spouse, buying a house, borrowing money, and the like-may involve a heavy element of uncertainty and risk-taking and are wholly unlike the decisions jurors ought to make in criminal cases." *United States v. Jaramillo–Suarez*, 950 F.2d 1378, 1386 (9th Cir.1991) (quoting Commentary to Ninth Circuit Model Jury Instruction

---

**6.** *See Weston v. Ieyoub*, 69 F.3d 73, 74–75 (5th Cir.1995) (upholding instruction that included both "substantial doubt" and "grave uncertainty" language); *Flamer v. Delaware*, 68 F.3d 736, 757 (3d Cir.1995) (upholding instruction that contrasted "substantial doubt" with "a mere possible doubt," "a vague, speculative" doubt, and a "whimsical doubt"); *Aiken*, 41 F.3d at 181 (upholding instruction that contrasted "substantial doubt" with "whimsical," "imaginary," "weak," and "slight" doubt).

**7.** Even if Nevada's "govern or control" instruction were understood to define reasonable doubt as that which would cause a person to refrain from acting, it would still be constitutionally indistinguishable from the "willingness to act" instruction. *See United States v. Tobin*, 576 F.2d 687, 694 (5th Cir.) (expressly treating a "refrain from acting" instruction as equivalent to a "willingness to act" instruction), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978).

**8.** Curiously, although the "hesitate to act" formulation of reasonable doubt might be understood to describe a higher burden of proof than the "willingness to act" formulation of proof

beyond a reasonable doubt, this distinction may not be what motivated the Supreme Court to endorse the "hesitate to act" formulation in the first place. In *Holland*, the Supreme Court disapproved of the definition of reasonable doubt as "the kind of doubt ... which you folks in the more serious and important affairs of your own lives might be willing to act upon." 348 U.S. at 140, 75 S.Ct. at 138. The Court's problem seems to have been not with the willingness to act phrasing itself, but instead with the definition of *doubt* as something people would act upon. The instruction should have either defined *proof* beyond a reasonable doubt as the kind of certainty people would act upon or, as the Court suggested, defined reasonable doubt as the kind of doubt that would undermine a person's willingness to act. *Id*.

That the Court was concerned with the instruction's nonsensical phrasing rather than the quantum of doubt described thereby is suggested by its observation that "[a] definition of doubt as something the jury would act upon would seem to create confusion rather than misapprehension." *Id.; see also United States v. Drake*, 673 F.2d 15, 20 n. 5 (1st Cir.1982) (examining the common misreading of *Holland*).

No. 3.03). Because people often act in important matters notwithstanding substantial uncertainty, the fear is that defining proof beyond a reasonable doubt in relation to a person's willingness to act in the weightier affairs of life might understate the government's burden of proof.[9]

This concern notwithstanding, neither the Supreme Court nor any circuit has invalidated an instruction which includes the willingness to act terminology where "the charge, taken as a whole, fairly and accurately conveys the meaning of reasonable doubt." *Robinson*, 546 F.2d at 314. The charge in this case communicated correctly the concepts of presumed innocence, the government's burden of proof, and the nature of reasonable doubt. *See id.* The jurors were told that they must have "an abiding conviction of the truth of the charge," i.e., of defendant's guilt, a correct formulation of the government's burden of proof under *Victor*, 511 U.S. at 14–15, 114 S.Ct. at 1247–48. Moreover, the charge plainly directed jurors to reach their decision based upon all of the evidence, with no suggestion that moral certainty might suffice in the absence of evidentiary proof, and the instruction employed no other suspect language.[10]

■ While we do not endorse the Nevada instruction's "govern or control" language, "not every unhelpful, unwise, or even erroneous formulation of the concept of reasonable doubt in a jury charge renders the instruction constitutionally deficient." *Vargas v. Keane*, 86 F.3d 1273, 1277 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996); *see also Victor*, 511 U.S.

at 27, 114 S.Ct. at 1253–54 (Ginsburg, J., concurring in part and concurring in judgment) ("[T]he test we properly apply in evaluating the constitutionality of a reasonable doubt instruction is not whether we find it exemplary. . . ."). Considering the jury instructions in this case in their entirety, we hold that the "govern or control" language did not render the charge unconstitutional.

**C.**

Because the trial court's use of the term "substantial" is unexceptionable under *Victor*, the "govern or control" language proves satisfactory in context, and the requirement that the jurors reach an abiding conviction of Ramirez's guilt based on all of the evidence correctly states the government's burden of proof, we hold that the jury charge did not unconstitutionally misstate the concept of reasonable doubt. Whether or not Ramirez's jury *could* have understood the Nevada instruction to impermissibly lower the government's burden of proof, we find no *reasonable likelihood* that the jury understood the instruction in this way. *See Gilday v. Callahan*, 59 F.3d 257, 266 (1st Cir.1995) (holding jury charge constitutional despite "find[ing] it difficult to say that a juror could not have been led astray" by the instructions).

This circuit has previously upheld instructions that combine "willingness to act" and "substantial doubt" components, *Hatheway v. Secretary of the Army*, 641 F.2d 1376, 1384 (9th Cir.), *cert. denied*, 454 U.S. 864, 102 S.Ct. 324, 70 L.Ed.2d 164 (1981), including the Nevada instruction itself. *Darnell*, 823 F.2d at 302.[11] Nothing in *Cage* or *Victor*

---

**9.** Even the preferred hesitate to act formulation frames reasonable doubt in terms of a person's decision-making in the weightier affairs of life and thus has faced increasing scrutiny and criticism. *See Victor*, 511 U.S. at 24–25, 114 S.Ct. at 1252–53 (Ginsburg, J., concurring).

**10.** Ramirez also objects to language in the instruction that the jury should reach its decision as to guilt "after the entire comparison and consideration of all the evidence." Use of the term "comparison," Ramirez contends, suggests the existence of a burden on the defendant. Quite to the contrary, the Supreme Court in *Victor* endorsed identical "comparison and consideration" language and deemed it a *protection* against deficiencies in a reasonable doubt instruction. *Vic-*

tor, 511 U.S. at 16, 114 S.Ct. at 1248; *see also Aiken*, 41 F.3d at 180.

**11.** We are not persuaded by the Tenth Circuit's analysis in *Monk v. Zelez*, 901 F.2d 885 (10th Cir.1990), in which the court invalidated an instruction that combined "substantial doubt" and "willingness to act" language. Even if we were otherwise persuaded by *Monk*, we are not convinced that the case would come out the same after *Victor*. The *Monk* Court held only that the jury *could* have been misled, not that it reasonably likely was misled, by the instruction. Moreover, the "substantial doubt" language that the court found "constitutionally defective" described the existence, rather than degree, of

persuades us that the result should be different today.[12]

## III

Because *Cage* and *Victor* do not undermine this court's decision in *Darnell* that the Nevada instruction comports with due process, we ultimately need not decide whether these cases announced a "new rule" of constitutional law and, if so, whether application of the rule to this case is barred by the retroactivity doctrine of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Aiken*, 41 F.3d at 178–79 (holding that *Cage* applies retroactively under *Teague*); *Nutter v. White*, 39 F.3d 1154, 1157–58 (11th Cir. 1994) (same); *see also Humphrey v. Cain*, 120 F.3d 526, 530 (5th Cir.1997) (holding the court bound by a prior, unpublished opinion in the Fifth Circuit denying the retroactive application of *Cage* and *Victor*), *reh'g en banc granted* (Sept. 9, 1997).

## IV

Our review on habeas is limited to determining whether the trial court's reasonable doubt instruction was constitutionally infirm. Although we do not herald the Nevada instruction as exemplary, we conclude that the overall charge left the jury with an accurate impression of the government's heavy burden of proving guilt beyond a reasonable doubt. Accordingly, we hold that the jury charge satisfied the requirements of due process.

**AFFIRMED.**

REINHARDT, Circuit Judge, dissenting:

Because I believe that the use of Nevada's reasonable doubt instruction violated Ra-mirez's right to due process, I respectfully dissent.

## I. Retroactivity of *Cage*

I first must resolve the issue that the majority needlessly avoids: whether the Supreme Court's holding in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328 (per curiam), may be retroactively applied to Ramirez's claim. We have already held that a petitioner made a "prima facie" showing that the *Teague* doctrine did not bar the retroactive application of *Cage*. *See Nevius v. Sumner*, 105 F.3d 453, 462 (9th Cir.1996). There is no doubt on the merits that *Teague* does not bar Ramirez's claim.

*Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and its progeny deny habeas petitioners the benefit of "new rules" of constitutional law announced after petitioners' convictions became final, subject to two exceptions: a constitutional rule must be applied retroactively if (1) it places "certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking to proscribe," *id.* at 307, 109 S.Ct. at 1073–74 (quotation omitted); or if (2) it is "central to an accurate determination of innocence or guilt," *id.* at 319, 109 S.Ct. at 1080; *see also Graham v. Collins*, 506 U.S. 461, 477, 113 S.Ct. 892, 903, 122 L.Ed.2d 260 (1993) (holding that retroactive application is required if rule implicates the fundamental fairness and accuracy of criminal proceeding). The second exception controls here. I therefore agree with the only two circuits that have published reasoned opinions on the issue [1] and would hold that *Cage* announced a new rule that must be applied retroactively.

---

doubt, *id.* at 890, and thus would be unexceptionable under *Victor*.

**12.** The Nevada Supreme Court has also held the Nevada instruction constitutional following the Supreme Court's decisions in *Cage* and *Victor*. *See Bollinger v. State*, 111 Nev. 1110, 901 P.2d 671, 674 (1995); *Lord v. State*, 107 Nev. 28, 806 P.2d 548, 555–56 (1991).

**1.** *See Adams v. Aiken*, 41 F.3d 175, 178–79 (4th Cir.1994) (holding that *Cage* satisfies second *Teague* exception), *cert. denied*, 515 U.S. 1124, 115 S.Ct. 2281, 132 L.Ed.2d 284 (1995); *Nutter v. White*, 39 F.3d 1154, 1157–58 (11th Cir.1994)

(same); *cf. Harmon v. Marshall*, 69 F.3d 963, 967 (9th Cir.1995) (per curiam) (citing both cases with approval). The Fifth Circuit, in *Humphrey v. Cain*, 120 F.3d 526, 530 (5th Cir.1997), *reh'g en banc granted* (Sept. 9, 1997), ruled that *Cage* did not satisfy the second *Teague* exception. The court, however, provided no reasoning in support of its holding; rather, it merely stated that it was bound by a prior, unpublished decision, *Smith v. Stalder*, No. 93–03683, 26 F.3d 1118 (5th Cir.1994) (table). In fact, the court went so far as to explain that "[i]n our view the Supreme Court has made it plain that *Cage–Victor* errors fit within the second *Teague* exception," but "[i]n spite of our view that *Sullivan*

To fall within the purview of *Teague*'s second exception, a constitutional rule must satisfy two criteria: (1) it must relate to the accuracy of the conviction; and (2) it must alter "our understanding of the bedrock procedural elements essential to the [fundamental] fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990) (internal quotation omitted). The Supreme Court's unanimous decision in *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), leaves no doubt that the *Cage* rule meets this standard.

First, jury instructions that relate to the burden of proof or elements of proof in a criminal case quite obviously relate to the accuracy of convictions. Moreover, reasonable doubt instructions not only relate to the accuracy of convictions; they provide for systematic accuracy in convictions. *See Sullivan*, 508 U.S. at 280, 113 S.Ct. at 2082 (where reasonable doubt instruction is faulty, "there is no *object*, so to speak, upon which harmless-error scrutiny can operate"). When there is "no verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered beyond absent the constitutional error is utterly meaningless," and courts are prohibited from even attempting to answer it. *Id.*

Second, the *Cage* rule defines a bedrock procedural element of fundamental fairness in criminal proceedings. In fact, this court has already held that *Sullivan*'s application to a claim alleging the failure to define an offense for a jury satisfies this fundamental fairness prong. *See Harmon v. Marshall*, 69 F.3d 963, 966 (9th Cir.1995) (per curiam). *Sullivan* explained that the rule announced in *Cage* required automatic reversal of the conviction. Thus, we have held that "[a]ny rule announced in *Sullivan* ... is central to

an accurate determination of [the defendant's] guilt and implicates the fundamental fairness of the trial." *Id.*

In altering our understanding of the constitutionally required level of proof required for all criminal convictions, *Cage* unquestionably affected our view of what constitutes fundamentally fair criminal proceedings. The *Sullivan* Court explained that the "[d]enial of the right to a jury verdict beyond a reasonable doubt is certainly [a structural error], the jury guarantee being a 'basic protectio[n]' whose precise effects are unmeasurable, but without which a criminal court cannot reasonably serve its function." *Id.* at 281, 113 S.Ct. at 2083 (quoting *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986)); *see also In re Winship*, 397 U.S. 358, 372, 90 S.Ct. 1068, 1076–77, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring) (stating that reasonable doubt standard is "an expression of fundamental procedural fairness").[2] "A misdescription of the burden of proof ... vitiates *all* of the jury's findings." *Id.* If jury instructions regarding the government's burden of proof are inordinately lenient, the defendant is stripped of one of his most basic procedural protections. Accordingly, I would acknowledge that *Cage* is one of those cases that reshapes our view of the bedrock element necessary for fundamentally fair convictions. *Cage* must be applied retroactively.

## II. The Jury Instruction

As the majority correctly notes, we must inquire de novo "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient" to constitute proof beyond a reasonable doubt. *Victor v. Nebraska*, 511 U.S. 1, 6, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994). Unlike the majority, however, I conclude that the Nevada instruction read as

makes *Cage* available retroactively, this panel may not grant Humphrey the relief he requests." *Id.* at 529–30. Because the *Smith* decision was not published and is not available on-line, I do not know what motivated the Fifth Circuit initially to deny retroactive application of *Cage*, and the respondent makes no arguments here in support of that court's holding other than simply citing it.

2. The Supreme Court has stated that a criminal trial infected by structural error "cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (citation and internal quotation marks omitted).

a whole more closely resembles the *Cage* instruction than that used in *Victor* and, therefore, would hold that Nevada's instruction violated Ramirez's right to due process.

Nevada's instruction contained the same threshold infirmity as the *Cage* and *Victor* instructions in that it stated that reasonable doubt must be "substantial." *Compare Cage*, 498 U.S. at 41, 111 S.Ct. at 329–30; *Victor*, 511 U.S. at 19, 114 S.Ct. at 1249–50. The word "substantial," as the Court has explained, can be understood as meaning "considerable in quantity"—which "could imply a doubt greater than that required for acquittal" under the Due Process Clause—rather than "real," which does not. *See Victor*, 511 U.S. at 19–20, 114 S.Ct. at 1249–50; *compare Webster's Ninth New Collegiate Dictionary* 1176 (1985) ("substantial" def'n 1(b)) *with id.* (def'n 3(b)). We must look, therefore, to the curative language in the instruction.

In this case, "substantial doubt" was contrasted with "mere possibility or speculation." Contrary to the majority's assertion, this phraseology is not "unexceptionable." *Maj. op.* at 1212. This places Nevada's primary curative language *right in between* the comparable phrase in *Cage* ("mere possible doubt"), which was insufficient to cure the "problematic" connotation of "substantial," 498 U.S. at 41, 111 S.Ct. at 329–30, and that in *Victor* ("from mere possibility, from bare imagination, or from fanciful conjecture"), which was sufficient, 511 U.S. at 20, 114 S.Ct. at 1250. *See Humphrey v. Cain*, 120 F.3d 526, 533 (5th Cir.1997) (holding that presence of "actual and substantial doubt" phrase, even though contrasted with "possible doubt" and "mere caprice, fancy, or conjecture" contributed to rendering instruction unconstitutional); *Adams v. Aiken*, 41 F.3d 175, 181 (4th Cir.1994) (holding that reference to substantial doubt was cured by contrast with "whimsical, imaginary, weak, and slight doubt"), *cert. denied*, 515 U.S. 1124, 115 S.Ct. 2281, 132 L.Ed.2d 284 (1995).

If the use of "substantial" were the Nevada instruction's only infirmity, it might be difficult to determine whether *Cage* or *Victor* controls the constitutional outcome, although the contrasting phrase employed in the Nevada statute is clearly not as sharp or distinctive as that in *Victor* and, indeed, adds little of substance to the contrast drawn in *Cage*. I am influenced, however, by the fact that Nevada's instruction also described the quantum of doubt necessary for acquittal in a manner that directly contravenes the standard set forth by the Court in *Victor*.

The Nevada instruction erroneously equated reasonable doubt with "doubt as would govern or control a person in the more weighty affairs of life." The Supreme Court has for decades strongly disfavored phrasing reasonable doubt even as doubt "which [people] in more serious and important affairs of [their] own lives *might be willing to act upon*." *Holland v. Unites States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954) (emphasis added). The Court has explained that "this section of the charge," if made at all, should be cast "in terms of the kind of doubt that would make a person *hesitate to act*." *Id.* The *Victor* court forcefully adopted this position, stating that the "hesitate to act standard gives a common-sense benchmark for just how substantial such a doubt must be." 511 U.S. at 20–21, 114 S.Ct. at 1250. The circuit courts are in agreement, uniformly criticizing deviations from the "hesitate to act" language and declaring unconstitutional instructions that contain "willing to act" phrases without curative elements. *See, e.g., Monk v. Zelez*, 901 F.2d 885, 889–90 (10th Cir.1990) (holding unconstitutional an instruction that defined reasonable doubt as "substantial" doubt and used "willing to act" language); *United States v. Jensen*, 561 F.2d 1297, 1300–01 (8th Cir.1977) (stating that instruction was "defective" because it failed to use "hesitate to act" language, but declining to reverse conviction because issue was not raised on appeal); *Scurry v. United States*, 347 F.2d 468, 470 (D.C.Cir.1965) (stating that instruction "den[ied] the defendant the benefit of a reasonable doubt" in stating that the evidence "must be such that you would be willing to act upon in the more important matters in your own life"), *cert. denied*, 389 U.S. 883, 88 S.Ct. 139, 19 L.Ed.2d 179 (1967); *see also United States v. Williams*, 20 F.3d 125, 129 (5th Cir.) (approving of instruction that defined proof beyond a reasonable doubt as

proof such that jurors would be "willing to rely and act upon it without hesitation"), *cert. denied,* 513 U.S. 891, 115 S.Ct. 239, 130 L.Ed.2d 162 (1994); *United States v. Daniels,* 986 F.2d 451 (11th Cir.1993) (approving similar instruction), *cert. denied,* 511 U.S. 1054, 114 S.Ct. 1615, 128 L.Ed.2d 342 (1994); *Nolasco,* 926 F.2d at 871–73 (noting this court's warnings against significant departures from "hesitate to act" language).[3]

Of all these cases, I believe that Nevada's instruction is most like the definition of reasonable doubt that the Tenth Circuit held unconstitutional in *Monk* and that the Court itself said was "similar" to the unconstitutional instruction in *Cage,* 498 U.S. at 41 n. *, 111 S.Ct. at 330 n. *; *compare Monk,* 901 F.2d at 889–90 (holding that instruction erroneously equated reasonable doubt with "substantial doubt" and with doubt that would prevent a person from acting in the "weighty and important" affairs of life). In addition to erroneously likening reasonable doubt to "substantial" doubt, the Nevada instruction's "govern or control" phrase contravenes *Victor*'s "hesitate to act" standard and is even less respectful of that standard than *Holland*'s disfavored "might be willing to act" phrase. The Nevada phrase confuses the issue by focusing the jurors on their ultimate choice in the face of uncertainty, instead of on the existence of the doubt itself, and implies that "reasonable doubt" is doubt that is so substantial that it would *prevent* an ordinary person from acting a certain way in his "weighty" decisions, rather than doubt

that causes a person to *hesitate* to act. *See Monk,* 901 F.2d at 890; *Scurry,* 347 F.2d at 470. Defining reasonable doubt as "decision-controlling" doubt, when combined with the reference to substantial doubt, and the potentially inadequate contrasting language, would likely incorrectly "convey the concept of reasonable doubt to the jury." *Holland,* 348 U.S. at 140, 75 S.Ct. at 138.

The majority apparently agrees that Nevada's instruction is most similar to that in *Monk,* but it declines to follow the Tenth Circuit's analysis. *See maj. op.* at 1214 n. 11. Relying throughout its opinion primarily on Fifth Circuit cases that follow a "downward swing" theory of interpreting *Cage*[4]—a theory not even remotely hinted at in *Cage* and not followed by a single other circuit—the majority further claims that *Monk* probably would not come out the same after *Victor* because *Victor* renders Nevada's use of "substantial doubt" "unexceptionable." Furthermore, the majority emphasizes that "[t]he charge in this case communicated correctly the concepts of presumed innocence, the government's burden of proof, and the nature of reasonable doubt." *Maj. op.* at 1214.

Contrary to the majority, I prefer to take the Supreme Court at its word and to follow the Tenth and a variety of other circuits' opinions rather than the Fifth Circuit's. Insofar as the majority rejects *Monk* based on the assumption that the Supreme Court in *Victor* overruled its reasoning in *Cage,* it is

**3.** This court also previously criticized instructing jurors to convict if they had "an abiding conviction of the accused's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs." *Hatheway v. Secretary of the Army,* 641 F.2d 1376, 1378 n. 2, 1384 (9th Cir.), *cert. denied,* 454 U.S. 864, 102 S.Ct. 324, 70 L.Ed.2d 164 (1981) (citing *Holland,* 348 U.S. at 140, 75 S.Ct. at 137–38). We declined to hold the instruction unconstitutional in that case, however, because, at that time, neither that language nor the equation of reasonable doubt with "substantial doubt" had ever been "held to be reversible error." *Id.* at 1384. The Court's decision in *Cage* obviously renders that reasoning inapplicable here. Moreover, since *Cage,* the "willing to make . . . important decisions" phraseology has become officially disfavored in this circuit because "the most important decisions in life" may be made notwithstanding "a heavy element of uncertainty and

risk-taking" and, therefore, are "wholly unlike the decisions jurors ought to make in criminal cases." Ninth Circuit Pattern Jury Instructions (Criminal) No. 3.03, at 31 (1995), *cited with approval in United States v. Jaramillo–Suarez,* 950 F.2d 1378, 1386 (9th Cir.1991); *see also Victor,* 511 U.S. at 24–25, 114 S.Ct. at 1252–53 (Ginsburg, J., concurring) (criticizing the analogy to important life decisions even when accompanied with "hesitate to act" language).

**4.** *See Brown v. Cain,* 104 F.3d 744, 755 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 1489, 137 L.Ed.2d 699 (1997), *cited in maj. op.* at 1212; *Weston v. Ieyoub,* 69 F.3d 73 (5th Cir.1995), *cited in maj. op.* at 1213; *Bias v. Ieyoub,* 36 F.3d 479, 481 (5th Cir.1994), *cited in maj. op.* at 1212; *United States v. Tobin,* 576 F.2d 687, 694 (5th Cir.), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978), *cited in maj. op.* at 1213.

plainly incorrect. Nothing in *Victor* indicates that it was overruling *Cage;* rather, the Court made it clear that the "same concern[s]" were "not present" in *Victor* as in *Cage;* "substantial" was not distinguished from "mere possible," but rather "from mere possibility, from bare imagination, or from fanciful conjecture." 511 U.S. at 20, 114 S.Ct. at 1250. Moreover, insofar as the majority rejects Ramirez's claim based on the Fifth Circuit's reasoning in this area of law, I would respectfully decline to follow that circuit on this issue. After being unanimously reversed in *Cage,* the Fifth Circuit decided to stand alone in adopting the untenable stance that *Cage* cannot be applied retroactively to habeas claims. *See supra* note 1.[5]

Lastly, I cannot join in the majority's belief that simply reciting to the jury the truism of presumed innocence or properly explaining the burden of proof somehow makes a defective definition of reasonable doubt more intelligible or more constitutionally acceptable. If the court misinstructed the jury on those fundamental points, that would only provide additional reasons for reversal. Getting those parts of the instruction correct, however, does not cure an error regarding the meaning of reasonable doubt. I also disagree with the majority that the instruction's infirmities were cured by telling the jurors that if they "feel an abiding conviction of the truth of the charge, there is not a reasonable doubt." While the use of "abiding conviction" can serve to alleviate an ambiguity that arises in the use of the term "moral certainty," it cannot cure the two manifestly defective definitions of reasonable doubt in the Nevada instruction. *See Monk,* 901 F.2d at 885 (declaring unconstitutional instruction with same two defects as Nevada instruction and with "abiding conviction" phrase). The Court in *Victor* stated that instructing the jurors that they must have "an abiding conviction of the defendant's guilt" helped to alleviate concerns that the phrase " 'moral certainty' might be misunderstood in the abstract." 511 U.S. at 21, 114 S.Ct. at 1250. The Court did not suggest that "abiding conviction" in itself stated the proper degree of certainty or that such term did so in a manner that could overcome

conflicting and erroneous definitions used in the same instruction. In fact, the phrase employed in *Victor* was "abiding conviction to a moral certainty," which establishes a considerably higher standard than does the simple term "abiding conviction" without the added exponential phrase. Nevada's instruction contained "abiding conviction" language, but it lacked any "moral certainty" language. Moreover, the "abiding conviction" phrase appears in a separate thought; it is not, nor could it logically be, said to modify either of the instruction's faulty definitions of reasonable doubt.

I find, therefore, nothing in the Nevada instruction that sufficiently cures its constitutional deficiencies in accordance with *Victor.* Accordingly, I would hold that there is a reasonable likelihood that, when considering the instruction as a whole, the jury interpreted Nevada's two definitions of reasonable doubt in the instruction as allowing a "finding of guilt based on a degree of proof below that required by the Due Process Clause." *Cage,* 498 U.S. at 41, 111 S.Ct. at 330.

I would reverse the district court and direct it to grant the writ of habeas corpus.

---

5. Even a panel of the Fifth Circuit subsequently criticized the court's decision, saying that it was bound to follow it even though it was wrong. *See supra* note 1.